ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| OFICINA DE ÉTICA GUBERNAMENTAL<br><br>RECURRIDA<br><br><br>V.<br><br><br>JORGE A. SANTINI PADILLA<br><br>RECURRENTE | KLRA202500029 | *REVISIÓN JUDICIAL* procedente de la Oficina de Ética Gubernamental de Puerto Rico<br>_____<br>CASO NÚMERO:<br><br>21-19<br>_____<br>SOBRE:<br>Violación a los incisos (b), (r) y (s) del Artículo 42 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico, Ley 1-2012 Según Enmendada |

Panel integrado por su presidenta la Jueza Domínguez Irizarry, el Juez Salgado Schwarz y la Jueza Díaz Rivera[2]

Salgado Schwarz, Carlos G., Juez Ponente

# **S E N T E N C I A**

En San Juan, Puerto Rico, a 11 de marzo de 2025.

Comparece Jorge A. Santini Padilla ("Recurrente" o "Lcdo. Santini") y solicita que revoquemos la Resolución Sumaria emitida por la Oficina de Ética Gubernamental ("OEG", "foro administrativo" o "agencia") el 12 de noviembre de 2024. Mediante dicha Resolución, la OEG recomendó que se le imponga una multa administrativa por haber encontrado al Recurrente incurso en violación a los incisos (r) y (s) del artículo 4.2 de la Ley de Ética Gubernamental.

Por los fundamentos que exponemos a continuación, se ***revoca*** la determinación recurrida.

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones. Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, será atendido por los integrantes de este panel, quienes adjudicaron el correspondiente recurso anterior (KLRA202200071).
[2] Mediante Orden Administrativa OATA-2025-005 del 22 de enero de 2025 se designa la Hon. Karilyn Díaz Rivera para entender y votar y por haberse inhibido la Hon. Monsita Rivera Marchand.

-I-

A continuación, exponemos los hechos pertinentes a la controversia de epígrafe. El 13 de julio de 2017, el Lcdo. Santini suscribió un *Contrato de Servicios Profesionales*[3] con el Senado de Puerto Rico ("Senado") para ofrecer servicios como Asesor Legislativo. Como parte de sus funciones, el Recurrente debía realizar investigaciones y acompañar al Presidente del Senado a sesiones, reuniones y vistas públicas.[4] Allá para el mes de septiembre de 2017, el entonces Gobernador Ricardo Rosselló Nevares activó a la Guardia Nacional de Puerto Rico para ayudar durante la emergencia ocurrida por el paso del Huracán María.[5] El Recurrente fue activado mediante la Orden 272-01[6], de conformidad con lo establecido en la OE-2017-047 y comenzó su servicio el 22 de septiembre de 2017 con un horario de 6:00am a 10:00pm por tiempo indefinido. Dicha activación se extendió hasta el 23 de mayo de 2018, fecha en la cual el Recurrente fue relevado del servicio militar activo estatal.[7] Es decir, el Recurrente prestó servicio en el servicio militar activo estatal de manera concurrente a su servicio como Asesor Legislativo y produjo las correspondientes facturas.[8]

A raíz de lo anterior, el 1 de diciembre de 2020 la OEG presentó una *Querella*[9] contra el Lcdo. Santini alegando violaciones a los artículos (b), (r) y (s) del artículo 4.2 de la Ley Orgánica de la Oficina de Ética Gubernamental de Puerto Rico ("LOOEG"). En síntesis, la OEG alega que el Recurrente le prestó servicios profesionales al Senado mientras cobraba por las labores que debía haber estado

---

[3] Véase Apéndice del recurso administrativo, págs. 145-152.
[4] *Íd.*
[5] *Íd.*, a las págs. 161-164.
[6] *Íd.*, a la pág. 433.
[7] *Íd.*, a la pág. 434.
[8] *Íd.*, a las págs. 437-468 y 568-641.
[9] *Íd.*, a las págs. 728-733.

realizando para la Guardia Estatal, ocasionando así la pérdida de fondos públicos. El 18 de diciembre de 2020, el Recurrente presentó una *Moción de Desestimación*[10] en la que arguyó que la OEG carece de jurisdicción sobre su persona, por lo que no tenía facultad para presentar la Querella de epígrafe. Así las cosas, el 15 de noviembre de 2021, el Oficial Examinador de la OEG emitió una *Orden* en la que denegó la referida moción dispositiva y le concedió un término al recurrente para contestar la Querella en sus méritos.[11] Inconforme, el Recurrente le solicitó a la agencia su reconsideración utilizando los mismos argumentos expuesto en la solicitud de desestimación.[12] Mediante Orden dictada el 11 de enero de 2022, la OEG se negó a reconsiderar.[13] Así las cosas, el Recurrente acudió ante este Tribunal mediante *Recurso de Revisión Judicial*[14]. Sin embargo, mediante *Resolución* emitida el 4 de marzo de 2022, desestimamos el recurso por resultar prematuro.[15]

Posteriormente, el 23 de enero 2023, el Lcdo. Santini presentó una *Moción de Resolución Sumaria*[16]. En síntesis, el Recurrente alegó que no era servidor público conforme la LOOEG, por lo que el foro administrativo no tenía jurisdicción sobre su persona. Además, alegó que, en el supuesto de que se determine que la agencia tiene jurisdicción, la OEG no ha presentado prueba clara, robusta y convincente que demuestre los elementos de las acciones instadas en contra del Recurrente. Así, el 7 de marzo de 2023, el foro administrativo presentó su *Oposición a Moción de Resolución Sumaria a Favor del Querellado y Solicitud de*

---

[10] Véase Caso Núm. KLRA202200071.
[11] *Íd.*
[12] *Íd.*
[13] *Íd.*
[14] *Íd.*
[15] *Íd.*
[16] Véase Apéndice del recurso administrativo, págs. 333-360.

*Resolución Sumaria a Favor de la Parte Querellante*[17]. En esencia, la agencia planteó que tiene jurisdicción sobre el asunto y que la prueba documental y testifical sustentan cada uno de los elementos requeridos para que se configure la violación a los artículos imputados. Finalmente, la OEG emitió una *Resolución*[18] el 16 de diciembre de 2024 acogiendo la recomendación de la oficial examinadora. A tales efectos, la agencia encontró al Recurrente incurso en violación a los incisos (r) y (s) del artículo 4.2 de la LOOEG, le impuso una multa administrativa de $4,000.00 y, como medida administrativa, determinó que debe restituir la cantidad de $832.74. Inconforme con dicha determinación, el 15 de enero de 2025 el Lcdo. Santini presentó un *Recurso de Revisión Judicial* ante este Tribunal e hizo los siguientes señalamientos de error:

> **ERRÓ EL FORO ADMINISTRATIVO AL DETERMINAR QUE EL LCDO. SANTINI PADILLA, COMO ASESOR LEGAL DE LA GUARDIA ESTATAL, ERA UN SERVIDOR PÚBLICO DE LA RAMA EJECUTIVA SUJETO A LA LEY ORGÁNICA DE LA OEG Y QUE, CONSECUENTEMENTE, LA OEG TIENE JURISDICCIÓN SOBRE LA MATERIA QUE NOS OCUPA.**

> **ERRÓ EL FORO ADMINISTRATIVO AL DETERMINAR QUE SE CONFIGURARON LOS ELEMENTOS DE LAS VIOLACIONES IMPUTADAS AL LCDO. SANTINI PADILLA EN LA QUERELLA BAJO LOS INCISOS (R) Y (S) DEL ARTÍCULO 4.2 DE LA LEY ORGÁNICA DE LA OEG.**

-II-

A. **Sentencia Sumaria**

Es harto conocido que las Reglas de Procedimiento Civil no aplican de manera automática a los procedimientos administrativos.[19] Ahora bien, nuestro Tribunal Supremo ha establecido que, en casos apropiados, se pueden adoptar normas de procedimiento civil para guiar el desarrollo del

---

[17] *Íd.*, a las págs. 361-678.
[18] *Íd.*, a las págs. 694-698.
[19] *Pérez v. VPH Motors Corp.*, 152 DPR 475, 484 (2000).

proceso administrativo, siempre que no sean incompatibles y contribuyan a una solución justa, rápida y económica de los casos.[20] Conforme con lo anterior y reconociendo que la LPAUG contempla la resolución sumaria de controversias, se extiende la aplicación de las disposiciones de la Regla 36 de Procedimiento Civil a dichos casos sumarios.[21]

El mecanismo de sentencia sumaria tiene como fin aligerar la tramitación de los casos en los cuales no existe una controversia de hechos real y sustancial que requiera la celebración de un juicio en su fondo.[22] Por lo tanto, para adjudicar en los méritos una controversia de forma sumaria es necesario que, de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y de cualquier otra evidencia ofrecida, surja que no existe controversia real y sustancial en cuanto a algún hecho material y que, como cuestión de derecho, procede dictar sentencia sumaria a favor de la parte promovente.[23]

En *Meléndez González et al. v. M. Cuebas*[24] el Tribunal Supremo de Puerto Rico estableció el estándar específico que debe utilizar el Tribunal de Apelaciones al revisar una sentencia sumaria. En primer lugar, por encontrarse en la misma posición que el foro administrativo, este Tribunal debe regirse por la regla 36 de Procedimiento Civil al momento de revisar este tipo de solicitudes. Evidentemente, el foro apelativo estará limitado, en la medida en que no puede considerar evidencia que las partes no presentaron ante el foro administrativo. La revisión del Tribunal de Apelaciones es una de *novo* y debe examinar el expediente de la manera más

---

[20] *Íd.*, a la pág. 485.
[21] 32 LPRA Ap. V, R. 36.
[22] *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).
[23] *Pérez Vargas v. Office Depot*, 203 DPR 687 (2019); *González Santiago v. Baxter Healthcare*, 202 DPR 281 (2019); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 224-225 (2015).
[24] 193 DPR 100 (2015).

favorable a la parte que se opuso a la solicitud de sentencia sumaria en el foro primario. Además de esta limitación, se ha aclarado que al foro apelativo le está vedado adjudicar los hechos materiales esenciales en disputa, porque dicha tarea le corresponde al foro de primera instancia o a la agencia.[25]

Segundo, por estar en la misma posición que el foro administrativo, el Tribunal de Apelaciones debe revisar que, tanto la Solicitud de Sentencia Sumaria, como la Oposición, cumplan con los requisitos de forma definidos en la Regla 36 de Procedimiento Civil y discutidos en *SLG Zapata-Rivera v. JF Montalvo*[26].

Un tercer factor que se debe considerar es si en realidad existen hechos materiales en controversia. De haberlos, el foro apelativo tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil. A tales efectos, deberá exponer los hechos materiales en controversia y aquellos que están incontrovertidos. Dicha determinación podrá hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro administrativo en su Resolución.

Finalmente, de encontrar que los hechos materiales están realmente incontrovertidos, el foro apelativo procederá a revisar de *novo* si la agencia aplicó correctamente el Derecho a la controversia.[27]

**B. Deferencia administrativa**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico[28] ("LPAUG") autoriza la revisión

---

[25] *Vera v. Bravo*, 161 DPR 308, 334-335 (2004).
[26] 189 DPR 414 (2013).
[27] *Meléndez González, et al. v. M. Cuebas*, Inc., et al. 193 DPR 100, 118-119 (2015). (citas omitidas).
[28] Ley Núm. 38 de 30 de junio de 2017, según enmendada.

judicial de las decisiones de las agencias administrativas. Es un principio establecido que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, debido a que estas cuentan con vasta experiencia y pericia para atender los asuntos que le han sido delegados por la Asamblea Legislativa.[29] Por lo tanto, las determinaciones de las agencias suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas.[30] Sin embargo, dicha norma no es absoluta. A tales efectos, nuestro más alto foro ha enfatizado que no podemos imprimirle un sello de corrección a una determinación, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. Nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta [sic] cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida.[31]

---

[29] *Hernández Feliciano v. Municipio de Quebradillas*, 2023 TSPR 6, 211 DPR ___ (2023); *O.E.G. v. Martínez Giraud*, 2022 TSPR 93, 210 DPR ___ (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).
[30] *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).
[31] *Íd.*; Véase, además, *Super Asphalt v. AFI y otro*, supra, a la pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad.[32] Bajo este criterio, la revisión judicial se limita a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción.[33] La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas.[34] Nuestro máximo foro ha expresado que esta intervención "*debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley.*"[35] Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad.[36] Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad.[37] No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra.[38] Ahora bien, nuestro más alto foro ha establecido que la deferencia que le deben los tribunales a la interpretación que haga el ente

---

[32] *O.E.G. v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, a la pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, a la pág. 127.
[33] *Íd.*
[34] *O.E.G. v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, 196 DPR 606, 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217.
[35] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 36.
[36] *Íd.*; *O.E.G. v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra.
[37] Véase Sección 4.5 de la LPAUG, 3 LPRA § 9675; *Rolón Martínez v. Supte. Policía*, supra, a la pág. 36; *Torres Rivera v. Policía de PR*, supra, a la pág. 627.
[38] *Íd.*

administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: (1) erró al aplicar la ley (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales.[39]

Finalmente, el Tribunal Supremo ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "*la deferencia judicial al expertise administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia.*"[40]

### C. Ley de Ética

La Ley Orgánica de la Oficina de Ética Gubernamental[41] ("LOOEG") tiene como propósito establecer un servicio público íntegro que mantenga la confianza en sus instituciones y asegure la transparencia en las funciones oficiales.[42] A fin de reafirmar su carácter preventivo y correctivo, la OEG tiene la facultad de imponer sanciones a los infractores de sus disposiciones. Así, el Artículo 4.7 dispone que toda persona que viole las disposiciones de la LOOEG y todo reglamento u orden promulgada por virtud de la referida ley será castigada con una multa administrativa que no excederá de $20,000.00 por cada violación.[43] Respecto a la controversia que nos ocupa, el Artículo 4.2 de la LOOEG establece una

---

[39] *Torres Rivera v. Policía de PR*, supra, a las págs. 627-628; *O.E.G. v. Martínez Giraud*, supra, a la pág. 90.
[40] *O.E.G. v. Martínez Giraud*, supra, a la pág. 91.
[41] Ley Núm. 1 de 3 de enero de 2012, según enmendada.
[42] *Oficina de Ética Gubernamental v. Manuel B. Martínez Giraud*, 2022 TSPR 93, 209 DPR___ (2022).
[43] 3 LPRA § 1857f.

serie de prohibiciones éticas de carácter general aplicables a los servidores y ex servidores públicos de la Rama Ejecutiva. Particularmente, el inciso (r) dispone que un servidor público no puede omitir el cumplimiento de un deber impuesto por ley o reglamento, si ello ocasiona la pérdida de fondos públicos o produce daño a la propiedad pública. Por su parte, el inciso (s) establece que un servidor público no puede llevar a cabo una acción que ponga en duda la imparcialidad e integridad de la función gubernamental.[44] Según nuestro más alto foro, la referida disposición penaliza el hecho de que un servidor público lleve a cabo acciones que pongan en duda la imparcialidad e integridad de la función gubernamental.[45] Cónsono con lo anterior, el Tribunal Supremo ha señalado que esta norma va dirigida a sancionar aquellas acciones que aparenten perjudicar, o de alguna manera estropear la confianza del público en sus instituciones gubernamentales. Sobre este particular, el máximo foro indicó:

> Ahora bien, **no cualquier conducta** que aparente representar un conflicto ético o una incompatibilidad con las funciones gubernamentales de un empleado público, por sí sola, debe ser considerada como una infracción punible bajo esta disposición. Esto es así, pues la amplitud con la que puede ser interpretada una prohibición de este tipo no puede representar, en lo absoluto, una carta blanca para que la mínima percepción sea procesada y castigada, sin tomar en consideración la totalidad de la prueba y sin eliminar el peso de factores externos que puedan incidir directamente sobre el asunto.[46]

En el mencionado caso, el Tribunal Supremo resolvió que la conducta tipificada en el Artículo 4.2(s) no está sujeta a que se quebrante, como infracción base, alguna otra disposición de la LOOEG. Es decir, una persona puede cometer

---

[44] 3 LPRA § 1857a.
[45] *O.E.G. v. Martínez Giraud*, supra.
[46] *Íd*. Énfasis nuestro.

una violación al Artículo 4.2(s) sin necesariamente haber infringido algún otro artículo del referido estatuto.

Por último, es menester señalar que el Tribunal Supremo estableció que cuando se cuestione el comportamiento ético de un funcionario público, así sea la simple apariencia de imparcialidad o deshonestidad, el cargo debe quedar establecido mediante **prueba clara, robusta y convincente** que, a su vez, supere y descarte todos los planteamientos basados en conjeturas y en relatos de terceros. Dicha conclusión fue alcanzada tomando en consideración que la naturaleza del procedimiento es una acusatoria, en la que el empleado público se encuentra sujeto a ser castigado con una multa sustancial o con el despido de su empleo.

### D. Código Militar de 1969[47]

El Código Militar de Puerto Rico tiene como propósito organizar las Fuerzas Militares del Estado Libre Asociado de Puerto Rico. Dicho cuerpo normativo, creó el cargo de Ayudante General, quien, como parte de sus prerrogativas podrá contratar los servicios de los empleados y funcionarios de la Guardia Nacional de Puerto Rico o de cualquier otra agencia o instrumentalidad del Estado Libre Asociado de Puerto Rico. Lo anterior con el consentimiento por escrito del jefe del organismo gubernamental para la cual presta servicio el empleado o funcionario. Sobre el particular, el Código Militar dispone que el Ayudante General "*podrá pagarles la debida compensación por los servicios adicionales que presten a la Guardia Nacional fuera de las horas regulares de servicios que presten como servidores públicos, sin sujeción a lo dispuesto por el Artículo 177 del Código Político o por cualquier otra ley.*"[48] Por su parte, la sección

---

[47] Código Militar aplicable a la controversia de epígrafe.
[48] 25 LPRA § 2059 (k)(1), Edición de 2016.

226 del derogado Código Militar dispone, en parte pertinente, lo siguiente:

> […] Se considerarán también en Servicio Militar Activo Estatal aquellos oficiales y hombres alistados que se encuentren en el desempeño de cualquier encomienda asignádales cuando así se especifique en las órdenes emitidas al efecto. En todos los casos antes indicados, las órdenes emitidas ordenando el ingreso al Servicio Militar Activo Estatal dispondrán lo correspondiente respecto de la transportación a proveerse, reembolso de gastos incurridos y la compensación, si la hubiere, <u>a pagarse por los servicios a prestarse</u>. […][49]

Mientras, en lo que respecta a la paga, la sección 302 lee como sigue:

> tanto la oficialidad como los hombres alistados en cualquiera de las ramas de la Guardia Estatal percibirá remuneración o paga por día de ejercicio por cualquier otro servicio oficial a que sean asignados, la cual remuneración o paga será de aquella cantidad que fuere establecida según se deja anotado anteriormente en esta misma sección; y Disponiéndose, además, que dicha remuneración o paga no afectará en modo alguno cualquier remuneración a la cual tenga derecho un miembro de la Guardia Estatal por razón de sus servicios como empleado del Gobierno Federal o Estatal.[50]

-III-

-A-

En el presente caso, el Recurrente nos solicita la revocación de la determinación emitida por la OEG tras alegar que dicha agencia carece de jurisdicción sobre la materia. Además, señala que erró el foro administrativo al determinar que hubo violaciones a la LOOEG. Atenderemos ambos errores en conjunto. Veamos[51].

Según indicamos en el acápite dos de este escrito, las Reglas de Procedimiento Civil no aplican automáticamente a

---

[49] 25 LPRA § 2077, Edición de 2016. Énfasis suplido.
[50] 25 LPRA § 2203, Edición de 2016.
[51] De esta forma, atendemos los dos errores en conjunto.

los procedimientos administrativos, sin embargo, pueden ser utilizadas para ayudar a alcanzar una solución justa del caso. Por lo tanto, debido a que la LPAUG incorpora la resolución sumaria de controversias, procede la aplicación de las disposiciones de la Regla 36 de Procedimiento Civil a estos casos. Siendo así, procede resolver un pleito sumariamente si conforme a la evidencia presentada no existe controversia real y sustancial en cuanto a un hecho material del caso. Un hecho material es aquel que tiene el potencial de impactar el resultado de la reclamación.[52] Para ello, el Tribunal debe tener a su disposición todos los hechos necesarios para resolver la controversia.[53] Esto es, que estamos impedidos de disponer de un caso por la vía sumaria cuando existan hechos fundamentales controvertidos.[54] Como parte del análisis de *novo* que le corresponde realizar a este Tribunal, a continuación, exponemos los hechos esenciales sobre los cuales no existe controversia:

1. El 13 de julio de 2017, el Lcdo. Santini otorgó un contrato de servicios profesionales con el Senado.[55]

2. El 22 de septiembre de 2017 el Lcdo. Santini fue activado al Servicio Militar Activo mediante la Orden 272-01.[56]

3. El Lcdo. Santini permaneció activo en el Servicio Militar hasta el 23 de mayo de 2018.[57]

4. Durante el periodo en controversia, el Lcdo. Santini fungió como Asesor Legal de la Guardia Estatal con carácter de remuneración económica.[58]

---

[52] *Oriental Bank v. Caballero García*, 2023 TSPR 103, 212 DPR ___ (2023).
[53] *Íd.*
[54] *S.L.G. Szendrey-Ramos v. Consejo titulares*, 184 DPR 133, 167 (2011).
[55] *Íd.*, a la pág. 8. Inciso #20.
[56] Véase Apéndice del recurso administrativo, pág. 433. El Tribunal Supremo de Puerto Rico se ha pronunciado en múltiples ocasiones respecto a la figura del contratista independiente. Esta figura surge cuando por la naturaleza de las funciones que ejerce y la forma en que presta los servicios, la persona resulta ser su propio patrono. Véase *Whittenburg v. Col. Ntra. Sra. del Carmen*, 182 DPR 937, 952 (2011).
[57] *Íd.*, a la pág. 434.

5. La Guardia Estatal se compone de miembros voluntarios que podrán ser ordenados con o sin remuneración.[59]

6. La Guardia Nacional le entregó al Recurrente un formulario 480.6B del Departamento de Hacienda de Puerto Rico por los servicios prestados como Asesor Legal mientras permaneció en el Servicio Militar Activo, bajo el cual se le hizo la retención del siete por ciento (7%) que, para efectos contributivos, corresponde a un contratista independiente.[60]

7. Como miembro de la Guardia Estatal, el Lcdo. Santini no era acreedor de licencia por vacaciones ni enfermedad.[61]

8. El Lcdo. Santini continuó prestando servicios profesionales en el Senado como Asesor Legislativo durante el período en que estuvo activo en el servicio militar conforme la Orden Ejecutiva.[62]

Debido a que la controversia de autos se remonta a los años 2017 y 2018 es de aplicación el Código Militar de 1969, actualmente derogado. Según surge del escrito en oposición presentado por la OEG, la agencia señala que el Lcdo. Santini violó la LOOEG ocasionando así la pérdida de fondos públicos y poniendo en duda la imparcialidad e integridad de la función gubernamental. No le asiste la razón.

Primeramente, debemos señalar que el Código Militar en la sección 226 dispone que los gastos incurridos y la compensación que le corresponda a las personas enlistadas en las fuerzas militares se pagará por los servicios prestados y no a base de un mínimo de horas. Por lo tanto, resulta irrelevante si la persona trabajó 2 horas o 12 horas, ya que la paga será la misma. Ahora bien, a pesar de lo anterior, la

---

[58] Véase Apéndice del recurso administrativo, pág. 8, inciso #13.
[59] *Íd.*, a la pág. 7, inciso 7.
[60] Véase Apéndice del recurso administrativo, pág. 8. Inciso #18.
[61] *Íd.*, a la pág. 8, inciso #15.
[62] *Íd.*, a la págs. 8-9, inciso 22.

Guardia Nacional provee unas hojas de asistencia que deben ser utilizadas por cada soldado activo a fin de registrar los días en los que prestaron servicio. Como parte de su escrito en oposición, la OEG presentó múltiples hojas de asistencia del Lcdo. Santini. Los horarios registrados, los cuales se repiten durante todas las fechas en controversia, son los siguientes:

0600-1800

0600-1500

0600-1600

Ahora bien, de los informes detallados de tareas que el Lcdo. Santini presentó al Senado, surge la cantidad de horas específicas en las que el Recurrente prestó sus servicios a dicho cuerpo. A modo de ejemplo, veamos el horario del 17 de octubre de 2017[63]. Según el informe presentado al Senado, ese día el Recurrente trabajó 5.5 horas. A su vez, la hoja de asistencia de la Guardia Nacional[64] refleja un horario estándar de 6:00am a 6:00pm, es decir, 12 horas. Lo mismo ocurre con el resto de las fechas en las que la OEG alega que hubo incongruencias. Es menester señalar que, como contratista independiente, el Lcdo. Santini podía prestar sus servicios militares en las restantes 6.5 horas que comprenden ese periodo y cumplir así con ambas responsabilidades, sin que su trabajo en el Senado sea impedimento para prestar servicio en la Guardia Estatal. El horario reflejado en las hojas de asistencia de la Guardia Nacional resulta irrelevante en la medida en que el Recurrente sería compensado por servicios prestados y no por horas trabajadas. Por lo tanto, las hojas de asistencia de la Guardia Nacional

---

[63] Véase Apéndice del recurso administrativo, pág. 588.
[64] Véase Apéndice del recurso administrativo, pág. 440.

sirven, únicamente, como prueba de que ese día el Recurrente prestó servicios para el servicio militar estatal.

Ahora, pasemos a evaluar el estándar de prueba ante un cuestionamiento ético. Nuestro más alto foro ha sido enfático en que, ante un escenario como el que nos ocupa, la prueba presentada debe ser clara, robusta y convincente. La OEG se ampara en las hojas de asistencia de la Guardia Nacional que, según indicamos, no reflejan las horas exactas en que el Recurrente prestó servicio. Además, el foro administrativo basa sus señalamientos en la información emitida por diferentes medios noticiosos, las cuales se limitaron a indicar que el Lcdo. Santini estaba siendo parte de una investigación y como parte de esta se solicitó cierta documentación sobre las nóminas del Recurrente. Debemos recordar que el Tribunal Supremo ha sido enfático en que, en situaciones como la que nos ocupa, la prueba presentada debe descartar todo planteamiento basado en conjeturas y relatos de terceros. Evidentemente, la publicación de una noticia que hace referencia a "*supuestas incongruencias*"[65] no cumple con el estándar requerido.

Como indicáramos anteriormente, el Artículo 4.2(r)[66] penaliza al servidor público por omitir el cumplimiento de un deber impuesto por ley o reglamento, si ello ocasiona la pérdida de fondos públicos o produce daño a la propiedad pública. De la prueba presentada por la Oficina de Ética Gubernamental, hay **ausencia total** de prueba de cuáles fueron los deberes que el Recurrente omitió cumplir. No hay una pieza de evidencia que demuestre que el Lcdo. Santini Padilla se ausentara sin autorización de su activación; que hubiese abandonado su labor como auditor de guerra; que no siguiera

---

[65] Véase escrito en oposición, pág. 30.
[66] *supra*

ordenes o que no cumpliera las mismas. Queda esa interrogante en el procesamiento de este caso bajo el inciso relacionado, máxime, cuando se interpreta el mismo bajo los criterios de la existencia o no de los elementos de delito, ya que este proceso es uno cuasi-penal.

Hay **ausencia total** de prueba también sobre cuáles fueron los fondos públicos que se perdieron mediante la omisión de los deberes inexistentes en la prueba.

El inciso (s) del Artículo 4.2 de la Ley de Ética Gubernamental, supra, establece que un servidor público no puede llevar a cabo una acción que ponga en duda la imparcialidad e integridad de la función gubernamental.

El análisis por llevarse a cabo con este articulado administrativo-penal es el mismo que el anterior, evaluando los elementos del tipo y examinándolos bajo el crisol del quantum de prueba de clara, robusta y convincente. Sin embargo, al examinar la prueba ofrecida por la Recurrida, observamos que toda alegación relacionada se fundamenta en recortes periodísticos con poco o ningún valor probatorio. Por lo tanto, existe **ausencia total de prueba** sobre esta infracción.

Por su parte, la OEG señala en su escrito que las acciones del Recurrente tuvieron como consecuencia la suspensión indefinida de este en el servicio militar. El documento[67] que hace referencia a la suspensión indica que dicha determinación se tomó como consecuencia de la investigación que se estaba llevando a cabo, no a base del resultado de esta. Por lo tanto, la actuación de la Guardia Nacional sobre este particular no puede ser utilizada por la OEG como fundamento para sus alegaciones, toda vez que no cumple con el peso probatorio que le exige nuestro

---

[67] Véase Apéndice del recurso administrativo, pág. 441.

ordenamiento jurídico al foro administrativo. A tenor con lo anterior, y en la medida en que la OEG no presentó prueba clara, robusta y convincente que demuestre que el Recurrente ocasionó la pérdida de fondos públicos, concluimos que las alegaciones de la agencia carecen de méritos.

-B-

En cuanto a la controversia traída sobre si la Oficina de Ética Gubernamental tiene jurisdicción sobre el Recurrente, consideramos preocupante el hecho de que para un ciudadano que funge como Guardia Estatal de forma voluntaria, y bajo contrato de servicios profesionales, que es activado por su Comandante en Jefe por una emergencia como lo fue el paso del Huracán María por nuestra Isla, exista tanta duda y opiniones encontradas sobre si es un servidor público o no. Toda persona al momento de agarrar sus herramientas de trabajo en la mañana debe estar consciente y haber sido previamente notificado que sus actuaciones se van a mirar a través del prisma de la Ley de Ética Gubernamental, habida cuenta que las consecuencias de incumplir con alguna disposición de esta Ley son multas cuantiosas, y hasta penas de presidio sin contar con el beneficio de sentencias suspendidas.

Estimamos que, dentro de la misma Oficina de Ética Gubernamental, existió esa duda. Esto lo confirma la opinión de la Lcda. Rosario y el consecuente procesamiento en este caso. No hay uniformidad cuando la determinación tomada puede cambiar dependiendo de quién esté al mando en la agencia, y la falta de uniformidad en este tema podría resultar catastrófico. La opinión de un jefe de agencia de esta naturaleza, aún no siendo en el formato correcto o en el procedimiento adecuado para que sea vinculante, como indica

la Recurrida en su alegato, tiene un peso significativo en la vida de los ciudadanos involucrados.

Entendemos que la activación del Lcdo. Santini Padilla por el Gobernador de Puerto Rico no lo convierte automáticamente en servidor público al amparo de la Ley de Ética Gubernamental, supra. Sus funciones como Auditor de Guerra durante este periodo de emergencia en nada se equipara a ser un contratista independiente que establezca política pública alguna. Por lo que entendemos que el recurrente, Lcdo. Jorge Santini Padilla, queda fuera de la jurisdicción sustantiva y procesal de la Oficina de Ética Gubernamental, por las funciones por la que fuera procesado en este caso.

Esta situación constituye una vaguedad en las definiciones de la Ley de Ética Gubernamental cuando estamos hablando de contratistas independientes que les vaya a cobijar las bondades y obligaciones de la referida Ley. Requiere que nuestras ramas hermanas de Gobierno establezcan claramente el alcance de la Oficina de Ética Gubernamental sobre ciudadanos que no tengan un nombramiento de empleado bajo la nómina del Gobierno de Puerto Rico.

Como dijo nuestro Tribunal Supremo, "no es cualquier conducta". Hay que examinarla a la luz de la totalidad de las circunstancias. Y en ausencia de prueba clara, robusta y convincente, solo queda una alternativa decisoria.

-IV-

Por los fundamentos antes expresados, se ***revoca*** la determinación apelada por no haberse presentado prueba que cumpla con el *quantum* de prueba requerido; y por no tener jurisdicción la Oficina de Ética Gubernamental sobre el contratista recurrente y en su consecuencia, se desestima la Querella presentada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal. La Juez Domínguez Irizarry concurre con el resultado, sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones